LOVECCHIO, J.,
By information filed on May 2, 2014, defendant is charged with seven counts of forgery and seven counts of identity theft. The charges arise out of a private criminal complaint that was filed by Thomas H. Ungard, Jr. against defendant. Mr. Ungard alleges that from February 8, 2006 through January 25, 2008, defendant completed applications for various student loans and listed Mr. Ungard as a cosigner by signing Mr. Ungard’s name without Mr. Ungard’s authorization. The loan applications were allegedly completed, signed and submitted on February 8, 2006; September 29, 2006; October 6, 2006; January 3, 2007; January 31, 2007; July 20, 2007; and February 25, 2008. The seven loans totaled approximately $60,000.00.
On February 24, 2015, defendant filed a motion to dismiss alleging that the prosecution was commenced later than permitted pursuant to 42 Pa. C.S. § 5552. Defendant asserts that the first alleged forgery occurred in October 2006 and the last forgery occurred in February 2008. Defendant further alleges that Mr. Ungard was made aware of the alleged crimes in December of 2010. Defendant asserts that all prosecutions for fraud and theft must be commenced within five (5) years after committed pursuant to 42 Pa. C.S. § 5552 (b).
A hearing was held before the court on March 24,2015. In defense of the petition, the Commonwealth first asserts that defendant’s motion is untimely.
The Commonwealth argues that defendant’s *551 arraignment was scheduled for May 5, 2014. All pretrial motions must be filed within thirty (30) days of the date of the arraignment. This motion, however, was not filed until February 19, 2015 well after the thirty (30) day period.
Defendant counters that the court should consider the merits of the petition in the “interests of justice.” Defendant argues that the parties were attempting to resolve the issue via either ARD or a Rule 586 disposition and that once it became apparent that said disposition could not be achieved, counsel filed the motion.
The court concludes that defendant’s argument is disingenuous at best. Indeed, defendant’s argument that the interests of justice require the court to hear the motion belies the procedural posture of the case and what appears to the court to be clear manipulation by defendant.
Defendant’s preliminary hearing was held on April 15, 2014. Defendant’s arraignment was scheduled for May 5, 2014. A status conference was scheduled for August 1, 2014 and a pretrial was scheduled for August 12, 2014. There is nothing in the record at all indicating that the parties had been negotiating or attempted to reach a pretrial disposition.
On May 5, 2014, the court entered an order acknowledging the arraignment waiver and scheduling the status conference and pretrial as set forth above. On May 6, 2014, Robert Cronin, Esquire of the Lycoming County Public Defender’s Office entered his appearance for defendant. At the August 1, 2014 status conference, the potential plea agreement was first referenced. The court noted that “the plea agreement is contingent on the defendant making the necessary arrangements to have the *552 cosigner/victim removed from the loan. If Defendant can arrange this, the Commonwealth will dismiss the charges.” Further, defendant was directed to appear for an October 10, 2014 status and to provide the court with verification that he was making efforts to accomplish the removal of the victim from the loans.
On October 10, 2014, defendant failed to appear for the status conference and obviously failed to provide any verification with respect to the plea agreement terms. Over defense counsel’s objection, a bench warrant was issued for defendant’s arrest.
On December 30, 2014, the Commonwealth filed a motion to revoke and forfeit bail. The hearing was scheduled for February 6,2015. Defendant appeared for the February 6,2015 hearing on the motion to revoke and forfeit bail. As well, the court held a hearing on the bench warrant.
In an order dated February 6, 2015, the court denied the Commonwealth’s motion to revoke and forfeit bail. While there was clearly a breach, the court exercised its discretion and decided to give defendant one additional opportunity. As was noted in the order:
The exercise of the court’s leniency in this situation is based upon the fact that the charges against the defendant do not involve personal injury, that the defendant does not appear to be a danger to society, that this is defendant’s first experience with the criminal justice system, that there may have been a miscommunication between the defendant and his counsel, and that the court does not wish to be overly punitive to the defendant when he may have at least an arguable defense.
*553 Defendant was advised to next appear in court on March 27, 2015 for a criminal status.
On February 19, 2015, defendant filed his motion to dismiss. In the motion, defendant alleges that his then counsel did not become aware of the alleged violation with respect to the limitations on prosecutions until February 6, 2015 during the hearing to revoke bail and that his then counsel entered his appearance and filed the motion.
Defendant was represented by the public defender’s office beginning with the preliminary hearing and continues to be so represented. Defendant has not provided any reason whatsoever as to why the court should permit him to file this motion so late in the proceeding and months after it was required to be filed.
Assuming, however, that the court would proceed to the merits, the court would deny defendant’s motion.
Mr. Ungard testified at the hearing. He is the stepfather of defendant. Sometime in 2010, he believes in November of 2010, he became aware that defendant had forged his name on student loan applications.
Mr. Ungard was contacted by Sallie Mae, the loan provider and then began what he described as a long and detailed process in an attempt to rectify the matter.
Mr. Ungard credibly testified that for a 2 1/2 year period beginning with February, March or April of 2011 until the fall of 2013, he and his wife, defendant’s mother, essentially lost contact with defendant. While defendant would come in and out of town on occasion and while they would actually see him on occasion, defendant did not provide them nor were they aware of where defendant was residing *554 or if he had a fixed residence. According to the information that they had, defendant supposedly went to West Chester University, left West Chester University and was living in either West Chester or the Philadelphia area and was homeless. They did not have an address for defendant but had a cell phone which gave them some ability to contact defendant although they were not able to have “regular contact.” It was not until October of 2013 that Mr. Ungard’s wife found out where the defendant was living.
According to Mr. Ungard, between early 2011 and late 2013, he left several voicemails with defendant pleading with him to contact him, left messages to get the matter taken care of, contacted him many times trying to reach out but without success. He and his wife did not know where defendant was residing for a long period of time. They were unable to ascertain his address.
Defendant also testified. He testified that in early 2010 he moved to West Chester, PA. He testified that he was a fulltime student at West Chester through the fall of 2012 at which time he stayed in West Chester for a short period of time, was living out of his car for a short period of time and then moved to Philadelphia. He indicated that he has resided in Philadelphia since 2012 or early 2013.
He indicated that he was in constant contact with his mother via phone calls and Facebook and that even though his home address was in Williamsport, much of his mail was forwarded to his West Chester address. He testified as well that he occasionally had contact with his mother in person.
With the parties’ consent and because defendant appeared to be having some difficulty with dates, the court *555 contacted the West Chester University Registrar. The registrar was unwilling at first to provide any information but because defendant was present and was available via speaker phone, the registrar provided the court with defendant dates of attendance. According to the registrar, defendant attended West Chester University from August 2011 through May 2013.
The parties do not dispute that the applicable limitations of prosecution is five years from the date of the offense. Defendant argues that the date of the offense is the last date used in the complaint, or February 25, 2008. Defendant argues that the complaint had to be filed no later than February 25,2013, but it was not filed until March 27,2014.
The Commonwealth argues that the period of time between March of 2011 to October of 2013 should be excluded from the computation pursuant to the tolling statute. The tolling provision notes that the limitations period is tolled during the time period in which the defendant has no reasonably ascertainable place of abode. 42 Pa.C.S. §5554(1).
The court agrees. Preliminarily, the court notes that it finds the testimony of Mr. Ungard credible and the testimony of defendant not credible. Indeed, in assessing defendant’s credibility, the court finds that not much, if anything, of what he stated can be believed. Defendant’s statements were internally inconsistent, inconsistent with the statements of Mr. Ungard and the West Chester University Registrar, entirely self-serving and clearly a product of ill-will toward Mr. Ungard. Defendant’s demeanor also supports the court’s conclusion. Defendant was evasive, uncertain, skittish and reluctant to answer questions.
*556 The court concludes that between at the very least March of 2011 until October 2013, defendant had no reasonably ascertainable place of abode. He may have been a student at West Chester University for a portion of that time but his address was not ascertainable by anyone, he did not provide it to anyone and, in fact, he was evading those who he allegedly defrauded. Defendant maintained his record address in Williamsport but bounced around between different apartments, dorms, others residences and even his car for a period of time.
The court cannot and will not sanction this evasive conduct or reward defendant. The law provides a mechanism for tolling and the elements have been satisfied.
ORDER
And now, this day of April 2015, following a hearing and argument, the court denies defendant’s motion to dismiss.